1

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10   SUZANNE L. MOSELEY,

11                      Plaintiff,              CASE NO. 11cv5323-BHS-JRC

12          v.                                  REPORT AND
                                                RECOMMENDATION ON
13   MICHAEL J. ASTRUE, Commissioner            PLAINTIFF'S COMPLAINT
     of the Social Security Administration,
14                                              Noting date: July 13, 2012

15                      Defendant.

16

17          This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed (see ECF Nos. 14, 21, 24).

21          The Administrative Law Judge in this matter failed to provide specific and

22   legitimate reasons to discount the opinion by an examining doctor that plaintiff suffered

23   from marked limitations relating appropriately to co-workers and supervisors and marked

24

limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting.  Therefore, this matter should be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

<u>BACKGROUND</u>

Plaintiff, SUZANNE L. MOSELEY, was thirty-six years old on her alleged date of disability onset of July 1, 2004 (Tr. 189). Although plaintiff does not have an extensive work history of substantial earnings, she appears to have earned over $50,000 from 2000 through 2004 (<u>see</u> Tr. 202-211). Plaintiff's severe impairments include at least a mood disorder and an anxiety disorder (Tr. 16).  Plaintiff has a history of various types of physical and emotional child abuse and domestic violence (<u>see</u> Tr. 354).

<u>PROCEDURAL HISTORY</u>

Plaintiff protectively filed applications for Supplemental Security Income and Disability Insurance benefits on January 22, 2008, alleging disability since July 1, 2004 (Tr. 14, 189-201). Her applications were denied initially and following reconsideration (Tr. 93-100, 103-07). Plaintiff's requested hearing was held before Administrative Law Judge John Bauer ("the ALJ") on December 14, 2009 (Tr. 32-65). On December 23, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 11-24).

On February 25, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-5). <u>See</u> 20 C.F.R. § 404.981. In April, 2011, plaintiff filed a complaint in

this Court seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 3). On September 14, 2011, defendant filed the sealed administrative transcript ("Tr.") regarding this matter (see ECF Nos. 10, 11). In her Opening Brief, plaintiff challenges the ALJ's review of the (1) medical evidence; (2) plaintiff's testimony and credibility; and (3) plaintiff's residual functional capacity ("RFC") (see ECF No. 14, p. 2). She also challenges the hypothetical presented to the vocational expert and the step five finding regarding plaintiff's ability to perform other work in the national economy (id.).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing* <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* <u>Davis v. Heckler</u>, 868 F.2d 323, 325-26 (9th Cir. 1989)); <u>see also Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* <u>Andrews</u>, <u>supra</u>, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" <u>See</u> <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* <u>Moore v. Comm'r of the Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." <u>Bray v. Comm'r of SSA</u>, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947) (other citation omitted)); <u>see also</u> <u>Molina v. Astrue</u>, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); <u>Stout v. Commissioner of Soc. Sec.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the

agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. Molina, supra, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; see also 28 U.S.C. § 2111; Shinsheki v. Sanders, 556 U.S. 396, 407 (2009); Stout, supra, 454 F.3d at 1054-55.

DISCUSSION

1.  The ALJ erred in his review of the medical evidence.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson v. Commissioner of Social Security Administration, 359 F.3d

1190, 1195 (9th Cir. 2004) (*quoting* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" <u>Morgan</u>, <u>supra</u>, 169 F.3d at 602 (*quoting* <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989) (*citing* <u>Brawner v. Sec. HHS</u>, 839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1396 (9th Cir. 1991); <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830-31 (*citing* <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725 (*citing* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. <u>Reddick</u>, <u>supra</u>, 157 F.3d at 725 (*citing* <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir.

1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing* Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, supra, 81 F.3d at 830 (citations omitted); see also 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. Lester, supra, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, supra, 242 F.3d at 1149 (*citing* Magallanes, supra, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." Van Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* Lester, supra, 81 F.3d at 831); see also 20 C.F.R.

§ 404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will consider the length and extent of the treatment relationship).

a. Dr. Kimberly Wheeler, Ph.D. ("Dr. Wheeler"), examining doctor

Dr. Wheeler examined and evaluated plaintiff on a number of occasions. Dr. Wheeler initially evaluated plaintiff on October 11, 2005 (see Tr. 348-57). Dr. Wheeler noted that plaintiff's Beck Depression Index score was 49, which was "well into severe range" (Tr. 348). She observed plaintiff's prominent vegetative symptoms (id.).

Similarly, Dr. Wheeler noted that plaintiff's score on the Beck Anxiety Index ("BAI") was 39 and "well into severe range also" (id.). Dr. Wheeler assessed that plaintiff's Beck scores both were congruent with her own objective observations (see id.). Dr. Wheeler conducted a mental status examination ("MSE") (see Tr. 352-54).

She observed that plaintiff exhibited blunted affect and dysphoric mood (see Tr. 352). Plaintiff also had an impaired fund of knowledge (see Tr. 353). She performed adequately on memory and concentration tasks, but with effort (see id.). Dr. Wheeler assessed that plaintiff was limited and passive with regard to judgment and problem solving skills (id.). She assessed that plaintiff exhibited fair insight, fair impulse control and a desire for treatment (id.). Regarding social activities of daily living, Dr. Wheeler opined that plaintiff was markedly impaired, being secluded and having only a few new shelter friends as well as being separated from family (Tr. 354).

Dr. Wheeler also observed that plaintiff was tearful and opined that plaintiff suffered from moderate to marked functional limitation on her ability to control physical or motor movements and maintain appropriate behavior (see Tr. 350). Dr. Wheeler also

opined that plaintiff suffered from marked limitations relating appropriately to co-workers and supervisors and marked limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (see Tr. 350). In this context she indicated that plaintiff was acutely depressed, withdrawn, passive and irritable with extended social contact (id.).

Dr. Wheeler evaluated plaintiff again on March 26, 2006 and again performed a MSE (see Tr. 358-71). Dr. Wheeler noted that plaintiff's Beck Depression Index ("BDI") was 26 and assessed that plaintiff's depression was improved with medication (see Tr. 358). However, Dr. Wheeler also indicated that plaintiff's Beck Anxiety Index ("BAI") was 40 and therefore was "well into severe range" (id.). Dr. Wheeler again opined that plaintiff's severe anxiety score was consistent with her observations and with plaintiff's history (id.).

Dr. Wheeler observed plaintiff's restricted/constricted affect and her anxious mood (Tr. 362). Dr. Wheeler assessed that plaintiff's thought content was paranoid (Tr. 363). She also observed that although plaintiff was able to recall three words after an immediate delay, she was able to recall only two out of three words after only a ten minute delay (see Tr. 363). Plaintiff exhibited issues with concentration tasks, specifically erring in serial 7s, indicating that she was "not good at math" and "can't think" (see id.).

Dr. Wheeler again assessed that plaintiff was passive in her judgment and problem solving (id.). When asked what she would do if she was lost in the forest or if there was a fire in a building, Dr. Wheeler indicated plaintiff's answer both times that she would

"wait" (id.). Again, plaintiff demonstrated fair impulse control and a desire for treatment (id.). Dr. Wheeler opined that plaintiff had moderate impairment in social activities of daily living and wrote in that plaintiff had just new friends and "trust issues" (Tr. 364).

Dr. Wheeler attached plaintiff's trail making test results to the March 26, 2006 evaluation (see Tr. 358, 368-71). She noted that plaintiff scored below the twentieth percentile on both the A and B tests (see id.). Dr. Wheeler assessed that plaintiff's slow times and time ratio resulted from plaintiff's anxiety, as plaintiff was being "overly cautious" and afraid of making errors (see Tr. 358).

Dr. Wheeler opined that plaintiff suffered from a marked degree of limitation in her ability to exercise judgment and make decisions, and Dr. Wheeler specifically hand wrote "quite passive" onto the assessment form (Tr. 360). Dr. Wheeler again indicated her opinion that plaintiff suffered from a marked degree of limitation in her ability to relate appropriately with co-workers and supervisors (id.). Dr. Wheeler also again indicated her opinion that plaintiff suffered from a marked degree of limitation in her ability to respond appropriate to and tolerate the pressures and expectations of a normal work setting, hand writing into this section "panic attacks" (id.). Dr. Wheeler indicated that plaintiff was off of her Paxil for 4-5 days, she indicated it was because plaintiff had "lost medical" (id.).

Dr. Wheeler indicated in her assessment that although plaintiff had responded well to treatment for depression and change in circumstances, her anxiety now was the "more prominent aspect of [the] clinical picture" (Tr. 361). Dr. Wheeler opined that plaintiff

was "quite passive, needs extra direction, would require greater supervision than some employees" (id.).

Dr. Wheeler evaluated plaintiff again on November 22, 2006 (Tr. 413-22). She indicated that plaintiff had again stopped Paxil and that plaintiff's anxiety flared and she was back on Paxil (Tr. 413). Dr. Wheeler indicated that plaintiff's Beck Depression Index was 36 and was into the marked/severe range and was up substantially (id.). She also indicated that plaintiff's Beck Anxiety Index was 59, which was "exceptionally high" and had flared recently (id.).

Dr. Wheeler again conducted a mental status examination ("MSE") (see Tr. 417-19). She observed that plaintiff demonstrated moderately severe paranoid behavior (Tr. 414). Dr. Wheeler also noted that plaintiff declined a drop-in option for group therapy and instead requested a one-on-one session (Tr. 416). Dr. Wheeler opined that plaintiff's paranoia precluded drop-in group sessions with strangers (id.). She indicated that she was considering a prescription to address plaintiff's paranoia, noting that plaintiff thought that her husband was "trying to set her up" when she saw him talking with others (see id.).

Dr. Wheeler noted plaintiff's report of excessive sleep on some days and insomnia on other days, indicating at that time that it was her first time up and showered in three days (Tr. 417). Plaintiff appeared a bit tense and anxious (id.). Again, plaintiff exhibited paranoid thought content and impaired memory after a ten minute delay (Tr. 418). However on this occasion, plaintiff's concentration was intact on serial 3s and 7s and she appeared to demonstrate less passivity in her judgment and problem solving (see id.). Again, plaintiff demonstrated fair impulse control and a desire for treatment (id.).

Dr. Wheeler indicated that plaintiff suffered from marked limitations in her ability to interact appropriately in public contacts and in her ability to control physical or motor movements and maintain appropriate behavior (Tr. 415). Dr. Wheeler opined that plaintiff suffered from moderate limitations in her ability to relate appropriately to co-workers and supervisors and to respond appropriately to and tolerate the pressures and expectations of a normal work setting (id.).

Dr. Wheeler evaluated plaintiff on March 13, 2007 (Tr. 439-46), conducted a mental status examination (Tr. 443-45), and indicated similar opinions to those provided on November 22, 2006 regarding plaintiff's marked and moderate functional limitations (Tr. 441; see also Tr. 415). As on each occasion, plaintiff demonstrated a desire for treatment, but Dr. Wheeler indicated that plaintiff "was told she only qualifies for drop in couns[eling] which is too intimidating for her" (see Tr. 442, 444). Plaintiff presented with an anxious mood and described sleep problems (see Tr. 443). Dr. Wheeler noted that plaintiff required four hours in order to get out of the house, demonstrating obsessive-compulsive disorder with substantial interference, as well as rigidity and anxiety (see Tr. 440, 442).

Dr. Wheeler's final evaluation of plaintiff in the record occurred on January 16, 2008 (see Tr. 449-58). Dr. Wheeler performed a fifth mental status examination (Tr. 453-55); made similar diagnoses as previously (see Tr. 450) and indicated that plaintiff's depression and anxiety index scores both were in the severe range (Tr. 449). Regarding plaintiff's severe depression and anxiety, Dr. Wheeler indicated specifically that plaintiff's scores indicating severity were both consistent with plaintiff's presentation

before Dr. Wheeler as well as with plaintiff's history (see id.). Dr. Wheeler also indicated specifically that plaintiff's anxiety and depression were more visibly prominent (id.).

Dr. Wheeler assessed that plaintiff was demonstrating OCD-based perseveration (see Tr. 450). She indicated that plaintiff had just left her abusive husband (Tr. 452). Plaintiff indicated again that she was having sleep problems and Dr. Wheeler assessed plaintiff's mood as anxious and dysphoric (Tr. 453). Similar to plaintiff's performance on her March 26, 2006 MSE, on January 16, 2008 Dr. Wheeler assessed that plaintiff again was "confused," impaired on a simple 10-minute delay memory task and unable to subtract serial 7s (see Tr. 454; see also Tr. 363 (March 26, 2006 MSE)). Dr. Wheeler opined that plaintiff was slow, using much effort yet unaware of her subtraction errors (see Tr. 454).

Similar to her previous assessments, Dr. Wheeler opined that plaintiff suffered from marked limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting and in her ability to control physical or motor movements and maintain appropriate behavior (see Tr. 451). Dr. Wheeler assessed that plaintiff was fragile, cried easily and was prone to panic (see id.). Dr. Wheeler also opined that plaintiff suffered from moderate limitations in her ability to relate appropriately to co-workers and supervisors and to interact appropriately in public contacts (id.).

The ALJ discussed some of Dr. Wheeler's evaluation reports and included the following in his written decision:

I assign some weight to the opinions of Dr. Kimberly Wheeler, Ph.D. (internal citation to Exhibits 6F, 7F, 15F, 19F, 22F). She opined that the claimant had no or only mild limitation with simple instructions and mild or moderate limitations with detailed instructions, which I accept. Dr. Wheeler also opined that the claimant had moderate or marked limitation interacting appropriately with the public, which I accept. However, I do not accept her opinions that the claimant has marked limitation relating appropriately to coworkers and supervisors. The claimant denied that she had problems getting along with family, friends, or neighbors (Exhibit 13Ep6). A friend accompanied her to the hearing. Despite her reported difficulty being around people, it does not appear that she had significant problems interacting with others at the shelter. I do not accept Dr. Wheeler's opinions that the claimant is markedly limited in the abilities to respond appropriately to and tolerate the pressures and expectations of a normal work setting and maintain appropriate behavior. Dr. Wheeler's opinions regarding the claimant's social functioning were based, in large part, on the claimant's less than fully credible self report and are therefore rendered less persuasive.

(Tr. 21)

> (1)     Dr. Wheeler's opinion that plaintiff suffered from marked limitation relating appropriately to co-workers and supervisors

First, the Court finds that even though plaintiff denied having problems getting along with family, friends, or neighbors, this does not appear determinative regarding plaintiff's ability to relate to co-workers and supervisors; plaintiff's co-workers and supervisors are not likely to be plaintiff's friends, neighbors or family, but are much more likely to be strangers. The record includes multiple indications of plaintiff's reluctance and paranoia around strangers, see supra, section 1.a. For example, as noted, Dr. Wheeler opined that plaintiff's paranoia precluded drop-in group sessions with strangers (Tr. 416).

Similarly, the fact that a friend accompanied plaintiff to her hearing is not a specific and legitimate reason to justify rejecting the opinion of Dr. Wheeler that plaintiff

suffered from marked limitation relating appropriately to co-workers and supervisors. <u>See</u> <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100 F.3d at 1466; <u>see also</u> <u>Lester</u>, <u>supra</u>, 81 F.3d at 831. Not only does the ALJ favor the opinion of a non-examining medical consultant over that of Dr. Wheeler, but Dr. Wheeler's opinion regarding plaintiff's marked social limitations is identical to Dr. Krueger's December, 2008 opinion on this issue (<u>see</u> Tr. 491).

Finally, it appears that the ALJ relies on a lack of evidence that plaintiff "had significant problems interacting with others at the shelter" (<u>see</u> Tr. 21). Even if plaintiff did not have such problems, the Court concludes that this is not a specific and legitimate reason to justify specifically rejecting the opinion of Dr. Wheeler, consistent with the opinion of Dr. Krueger, regarding the level of limitation suffered relating to supervisors (<u>see</u> Tr. 350, 360, 491). <u>See</u> <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100 F.3d at 1466; <u>see also</u> <u>Lester</u>, <u>supra</u>, 81 F.3d at 831. This is harmful error as the ALJ found that "claimant can interact appropriately with a supervisor" when determining plaintiff's residual functional capacity (<u>see</u> Tr. 18). The ALJ's findings regarding plaintiff's abilities and limitations relating appropriately to supervisors is not supported by substantial evidence in the record as a whole. <u>See</u> <u>Magallanes</u>, <u>supra</u>, 881 F.2d at 750.

The ALJ failed to evaluate plaintiff's limitations in this area and hence, failed to evaluate properly the medical evidence. <u>See</u> <u>Van</u> <u>Nguyen</u>, <u>supra</u>, 100 F.3d at 1466; <u>see also</u> <u>Lester</u>, <u>supra</u>, 81 F.3d at 831; <u>Magallanes</u>, <u>supra</u>, 881 F.2d at 750. Because the ALJ's finding regarding plaintiff's residual functional capacity was inconsistent with the opinion from Dr. Wheeler that was not rejected properly, the error was not harmless and

this matter should be reversed and remanded to the Commissioner for further administrative proceedings.

> (2) Dr. Wheeler's opinion that plaintiff was markedly limited in the abilities to respond appropriately to and tolerate the pressures and expectations of a normal work setting and maintain appropriate behavior

The ALJ gave one reason for rejecting Dr. Wheeler's opinions regarding marked limitations maintaining appropriate behavior and responding appropriately to and tolerating the pressures and expectations of a normal work setting: he found that "Dr. Wheeler's opinions regarding the claimant's social functioning were based, in large part, on the claimant's less than fully credible self report and are therefore rendered less persuasive" (Tr. 21). This Court already has discussed the five mental status examinations as well as the many objective observations of Dr. Wheeler during her evaluations of plaintiff, see supra, section 1.a. For example, Dr. Wheeler specifically indicated her assessment that plaintiff's severe depression and anxiety index scores (BDI and BAI) were consistent with her own objective observations (see Tr. 348, 358, 449), such as plaintiff's restricted/constricted affect and her anxious mood (see, e.g., Tr. 362).

Therefore, based on the relevant record, the Court concludes that the ALJ's finding that "Dr. Wheeler's opinions regarding the claimant's social functioning were based, in large part, on the claimant's less than fully credible self report" is not based on substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750. The ALJ has failed to provide specific and legitimate reasons to reject these opinions

from Dr. Wheeler regarding plaintiff's specific functional limitations on her ability to work. See Van Nguyen, supra, 100 F.3d at 1466; see also Lester, supra, 81 F.3d at 831.

Based on the relevant record and for the reasons discussed, the Court concludes that the ALJ failed to evaluate properly the medical evidence. The errors were not harmless and this matter should be reversed and remanded to the Commissioner for further administrative proceedings.

a.  Dr. David M. Dixon, Ph.D., ("Dr. Dixon"), examining doctor

On August 4, 2008, Dr. Dixon evaluated plaintiff and conducted a formal mental status examination ("MSE") (Tr. 459; see also Tr. 459-64). Dr. Dixon observed that plaintiff "displayed reserved and cautious social skills" and that her facial expression displayed decreased variability (Tr. 462). He observed that plaintiff spoke with decreased energy (id.). Dr. Dixon indicated that plaintiff's predominant mood was depression and sadness (id.).

Regarding plaintiff's judgment, Dr. Dixon opined as follows:

> [Plaintiff's] judgment appears poor and affected by poor comprehension and self-survival mentality. Her judgment is poor, as is her ability to perceive and accurately weigh alternatives, assess benefits and risks, and make reasonable life decisions in activities of daily living.

(Tr. 451). In his medical source statement, Dr. Dixon opined that plaintiff's attention and persistence were poor and that she interacted "fair" socially but was withdrawn (Tr. 463).

The ALJ included the following in his written decision:

> I assign limited weight to the opinion of David Dixon, Ph.D. (internal citation to Exhibit 23F). The medical source statement he provided is fairly vague and his opinion that the claimant's concentration was poor is

not supported by the claimant's activities or mental status examinations with Dr. Wheeler.

(Tr. ).

The Court first notes that Dr. Dixon's medical source statement was specific sufficiently to allow for an evaluation and understanding of his opinions (see Tr. 463). Therefore this finding does not provide a legitimate reason to discount this examining doctor's opinions. See Van Nguyen, supra, 100 F.3d at 1466; see also Lester, supra, 81 F.3d at 831.

Secondly, the ALJ's finding that Dr. Dixon's opinion that plaintiff's concentration was poor was not supported by plaintiff's activities or MSE with Dr. Wheeler is not supported by substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750. The ALJ fails to specify which activities of plaintiff demonstrate that she possessed adequate concentration ability to persist throughout a normal work week (see Tr. 18) in contrast to the finding by her examining doctor that her concentration was poor. In addition, the Court already has discussed findings during mental status examinations by Dr. Wheeler on more than one occasion when plaintiff demonstrated impaired concentration, see supra, section 1.a (see also Tr. 363 (March 26, 2006, plaintiff exhibited issues with concentration tasks, specifically erring in serial 7s, indicating that she was "not good at math" and "can't think"), Tr. 454 (on January 16, 2008 Dr. Wheeler assessed that plaintiff again was "confused," slow, impaired on a simple 10-minute delay memory task and unable accurately to subtract serial 7s despite effort).

For the reasons stated and based on the relevant record, the Court concludes that the ALJ failed to evaluate properly the medical evidence supplied by Dr. Dixon.

b.  Dr. Keith Krueger, Ph.D. ("Dr. Krueger"), examining doctor

On December 3, 2008, Dr. Krueger evaluated plaintiff and observed that plaintiff's anxiety was "palpable" (Tr. 492). As discussed previously, see supra, section 1.a, like Dr. Wheeler, Dr. Krueger opined that plaintiff suffered from marked limitations in her ability to relate appropriately to co-workers and supervisors, among other opinions (Tr. 491). In his written decision, the ALJ included the following discussion:

> I assign little weight to the opinion of Keith Krueger, Ph.D. (internal citation to Exhibit 27F). He saw the claimant on one occasion for a disability evaluation and she clearly exaggerated her symptoms. Dr. Krueger indicated the claimant was markedly depressed and anxious, which is not consistent with the treatment records from Kitsap Mental Health Services from around the same time. Approximately one month after Dr. Krueger conducted his evaluation the claimant indicated she no longer needed services through Kitsap Mental Health Services. Dr. Krueger observed that there were extreme scale elevations on the personality assessment inventory, which seemed unrealistic (internal citation to Exhibit 27Fp4).

(Tr. 22).

First, the Court notes that even though Dr. Krueger only examined plaintiff once, this is not a legitimate reason to discredit the examining doctor's opinion, especially when the ALJ favors the opinion from a non-examining medical consultant over the examining psychologist. See Van Nguyen, supra, 100 F.3d at 1466; see also Lester, supra, 81 F.3d at 831. The Court also finds that it is not clear from a review of the record that plaintiff "clearly" exaggerated her symptoms. See Magallanes, supra, 881 F.2d at 750.

The ALJ relies on inconsistent reports regarding plaintiff's depression and anxiety and finds that about one month after Dr. Krueger conducted his evaluation, plaintiff indicated that she no longer needed services through Kitsap Mental Health Services (Tr. 22). However, the ALJ failed to discuss the inconsistency between this finding and the fact that plaintiff had returned to Kitsap Mental Health Services approximately six months later for further mental health treatment (see Tr. 532-34).

Furthermore, the Court notes that a person suffering from a mental illness may not realize that she needs mental health treatment, or she may not realize that her "condition reflects a potentially serious mental illness." See Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996). It is not a legitimate reason necessarily to discredit an examining doctor's opinion about the severity of a mental illness because the mentally ill person herself has failed to realize the extent of her own mental illness. See id. Such facts may support a finding that such an individual actually suffers from a greater degree of functional limitation due to her mental impairment.

The ALJ also notes the potentially "unrealistic" extreme scale elevations on the personality assessment inventory, however Dr. Krueger was aware of this factor and nevertheless gave the relevant opinions regarding plaintiff's functional limitations. The ALJ must explain why his own interpretations, rather than those of the doctor, are correct, which the ALJ failed to do. See Reddick, supra, 157 F.3d at 725 (citing Embrey, supra, 849 F.2d at 421-22).

For the reasons discussed and based on the relevant record, the Court concludes that the ALJ failed to evaluate properly the opinion of Dr. Krueger and failed to evaluate properly the medical evidence.

c.   Other medical evidence, ARNP Tanya Spoon

Based on a review of the relevant record and because of the errors discussed above regarding the ALJ's review of the medical evidence, the Court concludes that the other medical evidence provided by treating Nurse practitioner ARNP Tanya Spoon should be evaluated anew following remand of this matter. Although Nurse Spoon provided lay evidence, that is, "other medical evidence," <u>see</u> 20 C.F.R. § 404.1513 (d)(1); <u>see also</u> <u>Turner v. Comm'r of Soc. Sec.</u>, 613 F.3d 1217, 1223-24 (9th Cir. 2010), she was a treating medical source and her opinions are important, especially regarding "key issues such as impairment severity and functional effects." <u>See</u> Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 at *2, *3.

d.   Other treating medical sources

Similarly, the significant and probative evidence provided by plaintiff's treating doctors that was not discussed explicitly by the ALJ in his written decision such as that from Drs. Sule Karakus, M.D.; Jeffrey T. Collins, M.D.; and Timothy Joos, M.D., should be evaluated explicitly following remand of this matter (<u>see</u> Opening Brief, ECF No. 14, pp. 11-13). The various diagnoses and treatment plans for prescription medications are not specific functional assessments, however they provide evidence consistent with the medical opinion evidence from acceptable medical sources that was rejected by the ALJ. As treating acceptable medical sources, their opinions should be afforded appropriate

weight and discussion. See SSR 96-2p, 1996 SSR LEXIS 9; see also Lester, supra, 81 F.3d at 830.

   2. Plaintiff's testimony and credibility should be evaluated anew following remand of this matter.

This Court already has determined that this matter should be reversed and remanded for further administrative proceedings, see supra, section 1. In addition, a determination of plaintiff's credibility relies on the assessment of the medical evidence, and here, the Court has found the assessment of the medical evidence to be improper. See 20 C.F.R. § 404.1529(c).

Furthermore, as noted previously, see supra, section 1.c, the Court notes that a person suffering from a mental illness may not realize that she needs mental health treatment, or she may not realize that her "condition reflects a potentially serious mental illness." See Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)). As noted by the Ninth Circuit, "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Id. (quoting with approval, Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Therefore, following remand of this matter, plaintiff's allegation that she is fearful regarding going outside of the house and regarding being around multiple people should be rejected explicitly if her failure to attend mental health treatment, such as group counseling sessions, is relied on as a basis to discredit her testimony and credibility (Tr. 20, 416). See SSR 96-7 1996 SSR LEXIS 4, at *22 ("the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to

seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"); see also Regennitter v. Comm'r SSA, 166 F.3d 1294, 1296 (9th Cir. 1999). Regarding plaintiff's mental health counseling, Dr. Wheeler indicated specifically that plaintiff wanted a one-on-one session and that plaintiff's paranoia precluded drop-in sessions for group therapy with strangers (see Tr. 416).

For the reasons stated and based on the relevant record, the Court concludes that plaintiff's credibility and testimony should be evaluated anew following remand of this matter.

3. Plaintiff's residual functional capacity ("RFC") should be evaluated anew following remand of this matter.

This Court already has determined that this matter should be reversed and remanded for further administrative proceedings due to the ALJ's failure to evaluate properly the medical evidence, see supra, section 1. The determination regarding the residual functional capacity of a claimant is based heavily on the review of the medical evidence; therefore, plaintiff's residual functional capacity ("RFC") should be evaluated anew following remand and a proper evaluation of the medical evidence here (see Opening Brief, ECF No. 14, pp. 21-22).

In addition, any of plaintiff's limitations as opined by Dr. Kristine Harrison, Psy.D. ("Dr. Harrison") that are not included in plaintiff's residual functional capacity should be rejected explicitly, especially if her opinion is relied on in the determination

regarding plaintiff's abilities and limitations (see Opening Brief, ECF No. 14, pp. 13-14).

See SSR 96-8p, 1996 SSR LEXIS 5 at *20 ("[i]f the RFC assessment conflicts with an

opinion from a medical source, the adjudicator must explain why the opinion was not

adopted").

Based on the reasons stated above and the relevant record, the Court concludes

that the sequential five-step evaluation process should be completed again following

remand of this matter.

4. This matter should be reversed and remanded for further proceedings.

The Ninth Circuit has put forth a "test for determining when evidence should

be credited and an immediate award of benefits directed." Harman v. Apfel, 211

F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is

appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, supra, 211 F.3d at 1178 (*quoting* Smolen v. Chater, 80 F.3d 1273, 1292 (9th

Cir.1996)).

Here, outstanding issues must be resolved. See Smolen, 80 F.3d at 1292. The

medical evidence is not conclusive and it is not clear from the record that the ALJ would

be required to find plaintiff disabled were the discredited evidence credited appropriately.

See Harman, supra, 211 F.3d at 1178; see also Smolen, 80 F.3d at 1292.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>Reddick</u>, <u>supra</u>, 157 F.3d at 722; <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting* <u>Waters v. Gardner</u>, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing* <u>Calhoun v. Bailar</u>, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's credibility and residual functional capacity. <u>See</u> <u>Sample</u>, <u>supra</u>, 694 F.2d at 642.

<u>CONCLUSION</u>

The ALJ failed to provide specific and legitimate reasons to reject the opinions of examining doctors, consistent with evidence from treating doctors, regarding plaintiff's functional limitations on her ability to work. Therefore, the medical evidence was not evaluated properly.

Based on this reason and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R.

Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 13, 2012, as noted in the caption.

Dated this 21st day of June, 2012.

J. Richard Creatura
United States Magistrate Judge